[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13814

Non-Argument Calendar

_____

QUANIAH R. STEVENSON,

Plaintiff-Appellant,

*versus*

DELTA AIR LINES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:16-cv-02571-AT

_____

Before ROSENBAUM, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

After appellant Quaniah Stevenson was terminated from her job with Delta Air Lines, Inc., she sued the airline, claiming that it had unlawfully discriminated and retaliated against her. The district court granted summary judgment to Delta on all claims, and Stevenson appealed. After careful review, we affirm.

I.

Stevenson, an African-American woman, worked for Delta.[1] As an employment benefit, Delta provided Stevenson and her designated travel companion, Jovan Dais, with "travel passes" for free or reduced-rate travel. In addition, Stevenson received "buddy passes" from Delta, which allowed her to provide reduced-rate travel to other friends and family members.

Delta had written policies regarding the use of the travel passes and buddy passes. It prohibited, among other things, the use of travel passes and buddy passes for business travel. Delta required its employees to keep control over their passes. An employee was responsible for ensuring that any pass she provided was not being used for business travel or any other improper pur-

_____

[1] Because we write only for the parties who are already familiar with the facts and proceedings in the case, we recite only what is necessary to explain our decision.

pose. Delta's written policies provided that if a pass was used for business travel, the responsible employee may be "subject . . . to disciplinary action, up to and including . . . termination of employment." Doc. 88-6 at 1.[2] Stevenson was "very familiar with" the policies related to travel passes and buddy passes. Doc. 88-4 at 25.

In 2014, Delta became concerned that some employees were allowing passes to be used for business purposes. It sent a memo to its employees reminding them not to "share [their] passes with anyone who intends to use pass travel for business purposes." Doc. 88-11 at 1. Delta again warned employees that a violation of the policy could result in termination of the employee who provided the pass.

At the same time, Delta announced it was starting a new initiative known as the "Fly Right" program to prevent abuse of the travel passes and buddy passes. As part of the initiative, Delta created a "Pass Protection Group," which consisted of employees tasked with "proactively identify[ing] cases of possible abuse and investigat[ing] them thoroughly." Doc. 88-10 at 2. The Pass Protection Group focused on employees whose travel companions had high travel pass usage and employees who shared buddy passes with individuals who received buddy passes from at least five Delta employees. One of the individuals the Pass Protection

---

[2] "Doc." numbers refer to the district court's docket entries.

Group identified was a passenger who received buddy passes from several Delta employees including Stevenson.

As part of its review, the Pass Protection Group looked at Stevenson's travel pass records and saw that Dais, Stevenson's designated travel companion, frequently used a travel pass to fly to a number of different locations. The Pass Protection Group investigated whether Dais was using his travel pass for business travel. During the investigation, the Pass Protection Group learned that Dais was a music producer.

The Pass Protection Group focused on a June 6, 2015 trip for which Dais used a travel pass to fly from Atlanta to Los Angeles, where he stayed for one night. Dais made the trip with Caleb Boyett, a music artist who used a buddy pass for the flight. On the day of the trip, Boyett posted to his social media accounts on multiple platforms, including Twitter and Instagram, that he would be performing that night as an opening act for Tyga, a rapper, at a concert in Bakersfield, California. That day, Boyett also posted to his Instagram and Twitter accounts a photograph with the caption, "ON SOME L.A. SHIT with @therealjovandais" and used the hashtag "#NODAISOFF."[3] Doc. 88-3 at 21.

---

[3] On his social media accounts, Dais had several other posts about Boyette. For example, he posted a photograph from the set where Boyette was recording a music video and on another occasion he posted about Boyette's upcoming performances in Austin, Texas. In both posts, Dais included the hashtag "#nodaisoff."

In July 2015, Delta interviewed Stevenson about Dais's travel. After the interview, the company concluded that Stevenson had not been "forthcoming" during the interview about Dais's travel. *Id.* at 31. It also determined that Dais had used the travel pass for "business purposes." *Id.* Because Stevenson had violated Delta's policies regarding travel passes and had recently received two other warnings for unrelated violations of company policy, Delta says, it decided to terminate her employment. At the time of the termination, Stevenson was over 40 years old.

Stevenson, initially proceeding *pro se*, sued Delta. She brought claims for race, sex, and age discrimination as well as retaliation claims. In her complaint, Stevenson denied that she had violated any policies related to travel passes. She also alleged that when other employees outside of her protected classes were found to have engaged in "the same or similar infractions [as those] attributed to [] Stevenson," they were not terminated. Doc. 3 at ¶ 40.

After the initial discovery period closed, Delta filed a motion for summary judgment. At that point, Stevenson retained an attorney who entered an appearance in the case. The attorney filed a motion to reopen discovery, which was granted.

After additional discovery, Delta filed a new motion for summary judgment. As required by the district court's local rules, along with its motion Delta submitted a brief and a separate statement of undisputed facts. *See* N.D. Ga. R. 56.1.

Delta sought summary judgment on all of Stevenson's claims. In its brief, Delta applied the burden shifting framework established by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). It argued that Stevenson had failed to establish a prima facie case of discrimination or retaliation and had no evidence that Delta's legitimate, nondiscriminatory reason for terminating Stevenson—that she had allowed Dais to use the travel pass for business purposes and was not forthcoming during the investigation—was pretextual.

Stevenson filed an opposition to the motion for summary judgment. The district court's local rules directed that when a party responds to a motion for summary judgment, it must file a "responsive brief" as well as a "response to the movant's statement of undisputed facts" and a "statement of additional facts which the respondent contends are material and present a genuine issue for trial." N.D. Ga. R. 56.1(B)(2). Rather than file three separate documents—a responsive brief, a response to Delta's statement of undisputed facts, and a statement of additional facts that present a genuine issue for trial—Stevenson filed a single document. In her opposition, Stevenson purported to respond both to the substance of Delta's motion and its statement of undisputed facts. Nowhere did Stevenson include a statement of additional facts that she contended were material and presented a genuine issue for trial.

The first few pages of Stevenson's response set forth her argument about why Delta was not entitled to summary judg-

ment. She argued that the evidence showed that she was "treated less favorably and differently (i.e., terminated with no warning for an alleged single violation of travel benefits) than individuals outside of her protected classification." Doc. 98 at 5. She also argued that there was evidence that other individuals outside of her protected class "committed more egregious acts [yet] were allowed to keep their job[s]." *Id.* And she contended that there was no evidence that Dais had engaged in business travel when he used the travel pass on June 6.

The remainder of Stevenson's response purported to respond to Delta's statement of undisputed facts. In this section, among other things, Stevenson identified by name 14 other employees who she said had allowed "their travel passes to be used for business travel" but had not been terminated. *Id.* at 9.

After reviewing the parties' submissions, the magistrate judge prepared a lengthy recommendation that the district court grant Delta's summary judgment motion. As a preliminary matter, the magistrate judge found that Stevenson had failed to comply with the district court's local rules governing responses to motions for summary judgment. The magistrate judge pointed out that Stevenson had not filed any statement identifying the issues as to which there was a material dispute and had failed to set forth her response to Delta's statement of undisputed facts in a separate document.

The magistrate judge also identified other ways that Stevenson's response was inadequate. For example, to support her

position that similarly situated employees were treated different-ly, she provided a record citation to "40 pages from a deposition and an exhibit containing information regarding 190 Delta em-ployees." Doc. 102 at 3–4 (emphasis omitted). The magistrate judge concluded that this response was insufficient because a judge is "not required to dig through volumes of documents and transcripts to try to figure out what facts [a party] might think support her position." Id. at 4 (internal quotation marks omitted).

Given these deficiencies, the magistrate judge concluded that the court could strike Stevenson's response entirely. But "in the interest of fairness and expediency," the magistrate judge said she would consider Stevenson's "noncompliant brief." Id. at 7 (in-ternal quotation marks omitted).

The magistrate judge then addressed the merits of Steven-son's race, sex, and age discrimination claims as well as her retali-ation claim. For each claim, the magistrate judge applied the McDonnell Douglas burden-shifting framework.

For the race and sex discrimination claims, the magistrate judge determined that Stevenson had failed to establish a prima facie case and also that she had failed to demonstrate pretext. To establish a prima face case, the magistrate judge explained, Ste-venson had to show that "her employer treated similarly situated employees more favorably." Id. at 26. The magistrate judge con-cluded that Stevenson had failed to come forward with such evi-dence. Although Stevenson had identified 14 individuals as poten-

tial comparators, the magistrate judge explained why each of these individuals was not similarly situated to Stevenson.

The first group of potential comparators the magistrate judge discussed was five employees Delta had cleared of any misconduct. Because Delta had not found that these employees engaged in misconduct, the magistrate judge concluded they were not similarly situated.

The second group of potential comparators were five employees Delta found had engaged in misconduct and disciplined. But because none of these employees' misconduct had involved "allow[ing] their travel passes to be used for business purposes," the magistrate judge concluded that they had not "engaged in the same basic misconduct as" Stevenson and thus were not similarly situated. *Id.* at 31–32.

The final group of potential comparators were four employees Delta found had engaged in misconduct by allowing their travel passes to be used for business purposes. But the magistrate judge concluded that these individuals were not similarly situated because there was no evidence that these individuals "were dishonest or evasive during their respective investigations." *Id.* at 36. In addition, these individuals were not similarly situated because there was "no evidence" that they "shared [Stevenson's] disciplinary history." *Id.*

But even assuming that Stevenson had established a prima facie case of race or sex discrimination, the magistrate judge con-

cluded, Delta still would be entitled to summary judgment. The magistrate judge explained that Delta had "articulated legitimate, non-discriminatory reasons" for Stevenson's termination: she was not "forthcoming" during her interview and Dais had used the travel pass for business purposes. *Id.* at 37 (internal quotation marks omitted). Because Stevenson had not demonstrated that each of these legitimate, non-discriminatory reasons was pretextual, the magistrate judge determined that Delta was entitled to summary judgment.

For Stevenson's age discrimination claim, the magistrate judge found that she had failed to establish a prima facie case or demonstrate pretext. The magistrate judge explained that to establish a prima facie case of age discrimination, Stevenson had to show, among other things, that "a substantially younger person filled the position from which [she] was discharged." *Id.* at 22 (internal quotation marks omitted). The magistrate judge concluded there was no evidence that a substantially younger person filled Stevenson's position after she was discharged or that "a substantially younger Delta employee was treated differently" from Stevenson. *Id.* at 23. Alternatively, even if Stevenson could establish a prima facie case, the magistrate judge concluded that Delta would still be entitled to summary judgment because Stevenson had failed to establish that Delta's legitimate, non-discriminatory reason for her termination was pretextual.

After recommending that the district court grant summary judgment to Delta on all the discrimination claims,[4] the magistrate judge considered Stevenson's retaliation claims. The magistrate judge concluded that Stevenson failed to establish a prima facie case of retaliation because there was no evidence that she ever had engaged in any protected conduct. The magistrate judge noted that Stevenson "freely admitted during her deposition[ that] she never made any complaints about any of the alleged harassment or 'discrimination' discussed in her [c]omplaint." *Id.* at 46–47. In any event, even if Stevenson had established a prima facie case, the magistrate judge concluded, Delta still would be entitled

---

[4] Stevenson also brought disability discrimination claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a). The district court granted summary judgment on the disability discrimination claims on several grounds, including because Stevenson failed to come forward with evidence showing that she was disabled under the ADA.

"To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against [her] is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). When an appellant fails to challenge one of the grounds on which the district court based its judgment, she is deemed to have forfeited any challenge to the ground, "and it follows that the judgment is due to be affirmed." *Id.* Because Stevenson does not raise any argument on appeal addressing the district court's conclusion that there was no evidence that she was disabled under the ADA, we conclude that the district court's grant of summary judgment on the disability discrimination claims is due to be affirmed. We thus address the ADA claims no further.

to summary judgment because Stevenson had failed to come forward with evidence of pretext.

Stevenson objected to the report and recommendation. The district court overruled Stevenson's objection, adopted the magistrate judge's recommendation, and granted Delta's summary judgment motion. The court stated that it reached this conclusion after "conduct[ing] a full *de novo* review of the record." Doc. 106 at 2. The court agreed with the magistrate judge that Stevenson failed to establish "a *prima facie* case as to any of her claims." *Id.* at 3. In addition, the court found that she had failed to "rebut[] the legitimate[,] nondiscriminatory reasons" put forth by Delta for her termination. *Id.*

This is Stevenson's appeal.

## II.

We review *de novo* a district court's grant of summary judgment, viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We review for abuse of discretion a district court's decision to rule on a summary judgment motion before all discovery disputes have been resolved. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

### III.

Stevenson argues on appeal that the district court erred in granting summary judgment to Delta on her discrimination and retaliation claims. She says that because this case was at the summary judgment stage, she did not have to satisfy the prima facie case requirement under the *McDonnell Douglas* framework. We reject Stevenson's argument that when a plaintiff travels under the *McDonnell Douglas* framework, she does not need to establish a prima facie case to survive summary judgment.

In this case, Stevenson brought race, sex, and age discrimination claims as well as retaliation claims. Because Stevenson attempted to prove that Delta acted with a discriminatory (or retaliatory) intent by circumstantial evidence, we look to the *McDonnell Douglas* burden-shifting framework.[5] *See* 411 U.S. 792. Un-

---

[5] A plaintiff also may defeat summary judgment by presenting a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 328 (11th Cir. 2011) (footnote omitted) (internal quotation marks omitted). But Stevenson raised no argument about the convincing mosaic framework in her opposition to the motion for summary judgment filed in the district court and raises no argument about it on appeal. We thus do not address the convincing-mosaic framework. *See Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1337 n.2 (11th Cir. 2022) (declining to consider convincing-mosaic framework when employee did not raise argument about the framework on appeal); *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 (11th Cir. 2021) (declining to consider convincing-mosaic framework when plaintiff did not adequately raise it in the district court).

der this framework, a plaintiff must first establish a prima facie case. *See id.* at 802.

We briefly review the elements of a prima facie case for each of Stevenson's claims. To state a prima facie case for race, sex, or age discrimination, a plaintiff must show that (1) she "belong[ed] to a protected class," (2) "she was subjected to an adverse employment action," (3) "she was qualified to perform the job in question," and (4) the "employer treated similarly situated employees outside her class more favorably." *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc) (internal quotation marks omitted); *see Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082–83 (11th Cir. 2005). With regard to the requirement that an employee must show that "similarly situated" employees outside her protected class were treated more favorably, we have explained that the plaintiff and any comparator must be similarly situated "in all material respects." *Lewis*, 918 F.3d at 1227 (internal quotation marks omitted). "Ordinarily," a similarly situated comparator "will have engaged in the same basic conduct (or misconduct) as the plaintiff" and "will share the plaintiff's employment or disciplinary history." *Id.* at 1227–28.

The elements of a prima facie case for a retaliation claim are different. A plaintiff must show: (1) she "engaged in statutorily protected activity," (2) "she suffered an adverse [employment] action," and (3) "the adverse action was causally related to the protected activity." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (internal quotation marks omitted).

For both discrimination and retaliation claims under the *McDonnell-Douglas* framework, once an employee sets forth a prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the employer's proffered reasons "were not its true reasons, but were a pretext for discrimination." *Id.*

Stevenson's primary argument on appeal is that the district court erred in applying the *McDonnell-Douglas* burden-shifting framework at the summary judgment stage. By requiring her to come forward with evidence of a prima facie case, she says, the district court improperly placed the burden on the nonmovant for summary judgment.

The district court did not err. When a plaintiff travels under the *McDonnell-Douglas* framework "[t]o avoid summary judgment, [she] must establish a prima facie case" of discrimination or retaliation. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999). Indeed, we have routinely applied the *McDonnell-Douglas* framework at the summary judge stage and affirmed the grant of summary judgment when the plaintiff failed to establish a prima facie case. *See, e.g., Morris*, 402 F.3d at 1082 (affirming grant of summary judgment to employer when plaintiff failed to establish prima facie case).

To support her position that as the non-movant for summary judgment she did not need to satisfy *McDonnell-Douglas*'s prima facie case requirement, Stevenson cites to our decision in *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217 (11th Cir. 1993). We fail to see how *Clark* supports Stevenson's argument. In that case, we affirmed the grant of summary judgment to the employer on several claims because the plaintiffs had "failed to establish a prima facie case" under *McDonnell-Douglas*. *Id.* at 1223–26. We simply cannot say that the district court erred when it considered at the summary judgment stage whether Stevenson established a prima facie case.

We also see no error in the district court's conclusion that Stevenson failed to establish a prima facie case. For the discrimination claims, the district court concluded that Stevenson failed to establish a prima facie case because she had not identified a similarly situated comparator. In response to Delta's summary judgment motion, Stevenson identified 14 potential comparators. But the district court adopted the magistrate judge's detailed explanation for why each potential comparator was not similarly situated.

On appeal, Stevenson barely addresses the district court's conclusion that the individuals she identified were not sufficiently similarly situated to qualify as comparators. At most, her brief incorporates by reference the argument she made in the district court. But "we will not consider any arguments a party attempts to incorporate by reference to filings in the district court." *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1250 (11th Cir. 2015).

Because Stevenson failed to make any substantive argument in her opening brief on appeal about why the district court erred in concluding that she failed to identify a sufficiently similar comparator, we conclude that she has abandoned this issue on appeal. *See id.* at 1250–51. Accordingly, we cannot say that the district court erred in granting summary judgment to Stevenson on her claims for race, sex, and age discrimination.

Turning to Stevenson's retaliation claim, the district court determined that Stevenson failed to state a prima facie case for an entirely different reason: there was no evidence that she had engaged in any protected conduct. The magistrate judge's recommendation, which the district court adopted, stated that there was no evidence that Stevenson had "exercised any statutorily protected rights." Doc. 102 at 46. On appeal, Stevenson raises no argument that the district court erred in determining that she had not engaged in protected conduct. We thus conclude that she forfeited any challenge to the grant of summary judgment on her retaliation claim. *See United States v. Campbell*, 26 F.4th 860, 874 (11th Cir. 2022) (en banc).

Stevenson offers one other reason to reverse the district court's grant of summary judgment to Delta. She says that the district court's ruling was premature given that she had previously filed a motion to compel and the magistrate judge had deferred ruling on the motion to compel until after a deposition of an additional Delta employee was completed. According to Stevenson,

the district court should not have ruled on the motion for summary judgment until after the motion to compel was resolved.

Even assuming a discovery dispute remained pending at the time that the district court granted summary judgment, we cannot say that the district court abused its discretion. "Although summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery, we have made clear that the party opposing the motion for summary judgment bears the burden of calling to the district court's attention any outstanding discovery." *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1286 (11th Cir. 2019) (internal quotation marks omitted). "Failure to satisfy this burden is fatal to an argument that the district court granted summary judgment prematurely by failing to order or await the results of further discovery." *Id.*; *see Urquilla-Diaz*, 780 F.3d at 1063–64 (holding that district court did not abuse its discretion in granting summary judgment motion when nonmovant failed to alert district court to outstanding discovery issue).

Stevenson argues on appeal that the district court should have deferred its ruling on summary judgment because there was an outstanding discovery issue. But when Delta moved for summary judgment in this case, Stevenson did not alert the district court that a discovery dispute remained pending. She did not file a declaration, affidavit, or other notice alerting the district court to the pending dispute. And she did not reference the allegedly outstanding discovery dispute in her opposition to summary judg-

ment or in her objections to the magistrate judge's recommendation. Because Stevenson failed to satisfy her burden of calling the district court's attention to the outstanding discovery issue, we cannot say that the district court abused its discretion in ruling on the summary judgment motion. *See Urquilla-Diaz*, 780 F.3d at 1063–64.

## IV.

For the reasons set forth above, we affirm the district court's grant of summary judgment.

**AFFIRMED.**